UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/17/11
```

------------------------------------------------------------------x

JOSEPH DWYER,

                   Plaintiff,

      -against-

GOLDMAN SACHS HEADQUARTERS LLC and
STRUCTURE TONE, INC.,

               Defendants.

------------------------------------------------------------------x

GOLDMAN SACHS HEADQUARTERS LLC and
STRUCTURE TONE, INC.,

            Third-Party Plaintiffs,

      -against-

OH&M ELECTRICAL CORP.,

            Third-Party Defendant.

------------------------------------------------------------------x

OH&M ELECTRICAL CORP.,

            Fourth-Party Plaintiff,

      -against-

UNITY ELECTRICAL CORP.,

            Fourth-Party Defendant.

------------------------------------------------------------------x

09 Civ. 7498 (SHS)

OPINION

SIDNEY H. STEIN, U.S. District Judge.

      In this slip-and-fall action, plaintiff Joseph Dwyer asserts claims pursuant to New York Labor Law §§ 200, 240(1), and 241(6) as well as common-law negligence claims, which arise out of injuries he suffered while working on a construction project. Defendants Goldman Sachs Headquarters LLC and Structure Tone, Inc.—the owner of the building where plaintiff's injuries occurred and the general contractor for the construction project, respectively—bring a third-party action seeking contractual indemnification from OH&M Electrical Corp., the subcontractor that employed Dwyer on the construction project.

1

Defendants have now moved for summary judgment, requesting that the Court dismiss plaintiff's complaint and grant defendants' contractual indemnification claim against OH&M in the third-party action. For the reasons set forth below, the Court grants defendants' motion for summary judgment with respect to (1) plaintiff's New York Labor Law § 240(1) claims; (2) plaintiff's New York Labor Law § 200 and common-law negligence claims; and (3) defendants' contractual indemnification claim against OH&M. With respect to plaintiff's New York Labor Law § 241(6) claims, defendants' motion for summary judgment is granted in part and denied in part.

## I.   BACKGROUND

Dwyer is a citizen of New Jersey. (Compl. ¶ 1; Answer ¶ 1.) Goldman Sachs is a Delaware corporation with its principal place of business in New York. (*Id.* ¶ 2; Answer ¶ 2.) Structure Tone is a New York corporation with its principal place of business in New York. (*Id.* ¶ 14; Answer ¶ 14.) Because the parties are diverse and more than $75,000 is in controversy, this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a). The Court has ancillary jurisdiction over defendants' contractual indemnification claim against OH&M. *See Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436-37 (2d Cir. 2000).

Goldman Sachs hired Structure Tone as general contractor for a construction project located at Goldman Sachs' headquarters in New York City. (Defs.' Local Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") ¶ 1; Pl.'s Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 1; Third-Party Def.'s Local Rule 56.1 Statement of Undisputed Facts ("OH&M's 56.1") ¶ 1.) Structure Tone in turn subcontracted with OH&M for OH&M to perform certain electrical work at that construction site. (Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 1; OH&M's 56.1 ¶ 1.) In April 2009, Dwyer was performing electrical work for OH&M at that site. (Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 1; OH&M's 56.1 ¶ 1.)

2

At the time, Dwyer was working in an area where "[c]omputer data floors" had been installed. (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6; OH&M's 56.1 ¶ 6.)  These floors consisted of two levels: a lower level made of concrete and a higher level made of two-by-two foot tiles.  The tiles were screwed into pedestals placed twelve-to-eighteen inches above the concrete subfloor. (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6; OH&M's 56.1 ¶ 6.)[1]  HVAC, electrical, and data wiring was installed in the area between the raised tile floor and the subfloor.  The floor tiles could be removed to allow access to that wiring. (Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11; OH&M's 56.1 ¶ 11.)

On April 16, 2009, Dwyer arrived at the construction site and brought an A-frame ladder to his work area. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; OH&M's 56.1 ¶ 8.)  He set up the ladder on the raised tile floor, climbed to the fourth rung, and began splicing wires in the ceiling. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; OH&M's 56.1 ¶ 8.)  While Dwyer was splicing wire, someone removed a tile from the raised floor, thereby creating an opening in the floor, and placed that tile on the ground next to Dwyer's ladder. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; OH&M's 56.1 ¶ 8.)  Subsequently, as Dwyer stepped down from the lowest rung of the ladder to the ground, his foot slipped on the removed floor tile and he fell into the opening in the floor. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; OH&M's 56.1 ¶ 8.)  As a result, Dwyer injured his knee, which eventually required surgery. (Defs.' 56.1 ¶ 17; Pl.'s 56.1 ¶ 17; OH&M's 56.1 ¶ 17.)

In August 2009, Dwyer commenced this personal injury action against Goldman Sachs and Structure Tone.  Defendants then brought a third-party action seeking contractual indemnification from OH&M, which, in turn, asserted a fourth-party claim against Unity

---

[1] The parties dispute the exact height of the raised floor.  For the purposes of this motion, the Court uses plaintiff's twelve-to-eighteen inch estimate.

3

Electrical Corp., another electrical subcontractor on the project. Defendants have now
moved for summary judgment.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.
R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether
a genuine dispute of material fact exists, this Court is required to "resolve all ambiguities,
and credit all factual inferences that could rationally be drawn, in favor of the party opposing
summary judgment." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206
(2d Cir. 2006). Nonetheless, the party opposing summary judgment "may not rely on mere
conclusory allegations nor speculation, but instead must offer some hard evidence" in support
of its factual assertions. *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998).

### B.    Plaintiff's Claims

Dwyer has asserted numerous state law claims, all of which boil down to essentially
one contention: that defendants failed to provide a safe construction site and that this failure
caused Dwyer's slip-and-fall accident in April 2009. The Court now turns to each claim.

#### 1.    New York Labor Law § 240(1)

Section 240(1) of New York's Labor Law imposes absolute liability on owners and
contractors "for injuries proximately caused by a failure to provide safety devices necessary
for protection to workers subject to the risks inherent in elevated work sites." *Agric. Ins. Co.,
Inc. v. Ace Hardware Corp.*, 214 F. Supp. 2d 413, 417 (S.D.N.Y. 2002) (internal quotation
marks omitted). Specifically, the statute provides that "[a]ll contractors and owners . . . shall
furnish or erect, or cause to be furnished or erected . . . scaffolding, hoists, stays, ladders,
slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so

constructed, placed and operated as to give proper protection to" workers employed on the premises. The duty imposed by Labor Law § 240(1) is non-delegable; the contractor and owner may be held liable even if they did not exercise supervision or control over the plaintiff's work. *See Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 500 (1993).

"The extraordinary protections of Labor Law § 240(1) extend only to a narrow class of special hazards, and do 'not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity.'" *Nieves v. Five Boro Air Conditioning & Refrigeration Corp.*, 93 N.Y.2d 914, 915-16 (1999) (quoting *Ross*, 81 N.Y.2d at 501 (emphasis in original)). "The core objective of the statute in requiring protective devices for those working at heights is to allow them to complete their work safely and prevent them from falling." *Nieves*, 93 N.Y.2d at 916. Section 240(1) is thus inapplicable where the plaintiff's "injury results from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first place." *Id.*

Here, the ladder Dwyer was using when the accident occurred did not malfunction in any respect or in any way cause his injuries. (*See* Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶ 9; OH&M's 56.1 ¶ 9.) Nevertheless, Dwyer argues that section 240(1) applies because the ladder was next to the removed floor tile and the floor opening. However, this argument is foreclosed by several decisions of the New York Court of Appeals. *See Nieves*, 93 N.Y.2d at 915 (finding that section 240(1) did not apply where plaintiff tripped on a concealed portable light when descending from a ladder); *Cohen v. Memorial Sloan-Kettering Cancer Ctr.*, 11 N.Y.3d 823, 825 (2008) (no liability where plaintiff fell while attempting to step from the second rung of a ladder to the floor below in order to avoid a protruding rod). As in *Nieves*, Dwyer's fall "resulted from a separate hazard wholly unrelated to the danger that brought about the need for the ladder in the first instance—an unnoticed . . . object on the floor." *Nieves*, 93 N.Y.2d at 916.

5

Dwyer also contends that the floor opening he fell into posed an elevation-related risk protected by Labor Law § 240(1). But Dwyer has not explained how his proximity to a floor opening that was, at most, eighteen-inches deep "could have entailed an elevation-related risk which called for any of the protective devices of the types listed in section 240(1)." *See Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 514-15 (1991); *see also Toefer v. Long Island R.R.*, 4 N.Y.3d 399, 408 (2005). Furthermore, as the use of raised floors for computer wiring has increased, so have the number of litigations such as this one. In recent years, several Appellate Divisions have specifically concluded that section 240(1) does not apply where, as here, a worker falls into an unmarked opening in a raised floor. *See, e.g., Romeo v. Property Owner USA (LLC)*, 61 A.D.3d 491, 491 (1st Dep't 2009); *Geonie v. OD & P NY Ltd.*, 50 A.D.3d 444, 496 (1st Dep't 2008) ("plaintiff's stepping into the opening left by the removal of a tile in a raised 'computer floor' was not caused by defendants' failure to provide safety devices to protect against an elevation-related hazard"); *D'Egido v. Frontier Ins. Co.*, 270 A.D.2d 763, 765 (3d Dep't 2000). Accordingly, the Court finds that section 240(1) does not apply and dismisses plaintiff's section 240(1) claims.

###### 2.    *New York Labor Law § 241(6)*

Dwyer also brings claims pursuant to New York Labor Law § 241(6), which requires that owners and contractors "provide reasonable and adequate protection and safety" to their workers. N.Y. Labor Law § 241(6). To establish liability under this section, the plaintiff must allege a violation of at least one of the implementing regulations set forth by the Commissioner of the Department of Labor. *See Ross*, 618 N.E.2d at 86; N.Y. Labor Law § 241(6). The regulation alleged to have been breached must set forth a "specific, positive command" and not simply a recitation of common-law safety principles. *See Rizzuto v. L.A. Wenger Contr. Co.*, 91 N.Y.2d 343, 349 (1998). The duty to comply with such regulations is non-delegable. Thus, even if the general contractor and owner were not at fault, they may be

6

held vicariously liable under section 241(6) if one of their subcontractors failed to comply

with a regulation. *See Ross*, 618 N.E.2d at 86. "The interpretation of an Industrial Code

regulation and determination as to whether a particular condition is within the scope of the

regulation present questions of law for the court." *Messina v. City of New York*, 300 A.D.2d

121, 123 (1st Dep't 2002). In this action, Dwyer alleges violations of Industrial Code § 23-

1.7(b)(1), (d), and (e) as well as § 23-2.1(a) and (b).[2]

   a.   Industrial Code § 23-1.7(b)(1)

   New York Industrial Code § 23-1.7(b)(1) provides, in pertinent part, that "[e]very

hazardous opening into which a person may step or fall shall be guarded by a substantial

cover fastened in place or by a safety railing." Although there is no bright-line rule, an

opening must be "of significant depth and size" in order to be considered a "hazardous

opening." *D'Egidio*, 270 A.D.2d at 765; *see Romeo*, 61 A.D.3d at 492.

   The Court finds that regulation 23-1.7(b)(1) is inapplicable in this action because the

hole into which plaintiff fell, which was at most two-by-two feet and eighteen-inches deep, is

too small to be considered a "hazardous opening." *See Barillaro v. Beechwood RB

Shorehaven, LLC*, 69 A.D.3d 543, 544 (2d Dep't 2010) (eighteen-to-twenty-four-inches deep

trench is insufficient); *Romeo*, 61 A.D.3d at 492 (two-by-two feet opening and eighteen-

inches deep "did not present significant depth and size to warrant the protection of the

provision"); *Rice v. Bd. of Educ.*, 302 A.D.2d 578, 579 (2d Dep't 2003) (one-by-one foot

opening and thirty-to-thirty-six-inches deep is insufficient); *D'Egidio*, 270 A.D.2d at 765

(five-by-twelve-inch opening and fifteen-to-twenty-four inches deep is not "of significant

depth and size"). In *Salazar v. Novalex Constr. Co.*, 72 A.D.3d 418 (1st Dep't 2010), the

sole case Dwyer cites in relation to this regulation, the trench that the plaintiff fell into was at

---

   [2] § 23-2.1(b) deals with the disposal of construction debris and has no relevancy to this action.
Therefore, the Court dismisses plaintiff's § 23-2.1(b) claim.

least thirteen times larger than the hole at issue here. *Id.* at 422-23. Because § 23-1.7(b)(1) does not apply to this action, defendants are entitled to summary judgment as a matter of law with regard to plaintiff's § 23-1.7(b)(1) claim.

   b. Industrial Code § 23-1.7(d)

  Industrial Code § 23-1.7(d), which concerns "slipping hazards," provides that "[e]mployers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing."

  In this action, it is undisputed that Dwyer slipped on a loose floor tile. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; OH&M's 56.1 ¶ 8.) Defendants contend that the tile is not a "foreign substance" within the meaning of the regulation. However, several Appellate Divisions have found that a solid object falls within the definition of a "foreign substance" under § 23-1.7(d). *See, e.g., Hageman v. Home Depot U.S.A., Inc.*, 45 A.D.3d 730, 732 (2d Dep't 2007) (pieces of glass); *Lopez v. City of N.Y. Transit Auth.*, 21 A.D.3d 259, 259-60 (1st Dep't 2005) (debris from construction); *Partridge v. Waterloo Cent. Sch. Dist.*, 12 A.D.3d 1054, 1056 (4th Dep't 2004) (loose cardboard). Because disputed issues of material fact exist as to whether defendants permitted  Dwyer to use a floor that was in a "slippery condition," the Court denies defendants' motion for summary judgment as to plaintiff's § 23-1.7(d) claim.

   c. Industrial Code § 23-1.7(e)

  Industrial Code § 23-1.7(e)(2), which concerns "tripping and other hazards" in working areas provides that: "The parts of floors, platforms and similar areas where persons

8

work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials . . . insofar as may be consistent with the work being performed."[3]

Defendants argue that this regulation is inapplicable because the tile was an "integral part" of the work being done in the area. *See Adams v. Glass Fab, Inc.*, 212 A.D.2d 972, 973 (4th Dep't 1995). However, on the day of the accident, Dwyer was splicing wires in the ceiling. He did not remove the floor tile on which he slipped. *See Collins v. Switzer Const. Grp., Inc.*, 69 A.D.3d 407, 408 (1st Dep't 2010). Nor is there any evidence that on the day of the accident he had been removing other floor tiles or working in the area between the raised floor and the subfloor. Therefore, defendants have not shown that the removed floor tile was an "integral part" of the work that Dwyer—as opposed to some other employee or subcontractor—was performing at the time of the accident. *See id.*; *Tighe v. Hennegan Const. Co., Inc.*, 48 A.D.3d 201, 202 (1st Dep't 2008) (finding § 23-1.7(e)(2) applicable because the debris that plaintiff tripped on "was not an integral part of the work being performed by the plaintiff at the time of the accident"). Because there is a disputed issue of material fact as to whether the floor was kept free from scattered material, defendants' motion for summary judgment on plaintiff's § 23-1.7(e)(2) claim is denied.

d. Industrial Code § 23-2.1(a)

Industrial Code § 23-2.1(a)(2) provides that "[m]aterial and equipment shall not be placed or stored so close to any edge of a floor, platform or scaffold as to endanger any person *beneath* such edge." 12 N.Y.C.R.R. § 23-2.1(a)(2) (emphasis added). Dwyer urges that defendants violated this regulation because the removed floor tile should not have been placed so close to the opening in the floor. However, this regulation addresses the risk that an object might hit a person standing *below* a floor, platform, or scaffold. Here, no such risk

---

[3] § 23-1.7(e)(1), which requires that "passageways" be free from obstruction, is inapplicable because Dwyer was not in a "passageway" when he was injured.

existed because there was, at most, an eighteen-inch height differential between the raised floor and the subfloor. The Court thus dismisses plaintiff's § 23-2.1(a) claim.

### 3.   New York Labor Law § 200 and Common Law Negligence

New York Labor Law § 200 is a codification of the common-law duty of owners and general contractors to maintain a safe work site.[4]  *See Ross*, 81 N.Y.2d at 505. There are two types of section 200 claims: (1) those involving the manner in which work was performed, and (2) those involving a dangerous or defective condition at a work site. *See Martinez v. City of N.Y.*, 73 A.D.3d 993, 997 (2d Dep't 2010).

To be held liable for injuries arising from the manner in which work was performed, a defendant "must have actually exercised supervision and control over the work performed at the site." *See Mcleod v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints*, 41 A.D.3d 796, 798 (2d Dep't 2007). General supervisory authority alone is insufficient to establish supervisory control; the defendant must have controlled the specific manner in which the plaintiff performed his work. *Id.* Where the plaintiff's injuries stem from a dangerous condition on the premises, a defendant may be liable "if it had control over the work site and either created the dangerous condition or had actual or constructive notice of it." *Martinez*, 73 A.D.3d at 998.

Defendants contend that Dwyer cannot sustain a claim under either theory of liability. As an initial matter, Goldman Sachs asserts that it neither controlled nor supervised Dwyer's work, nor did it have actual or constructive notice of the allegedly dangerous condition—a removed floor tile placed on the ground and an unmarked and unguarded floor opening—that caused the accident. Moreover, it is undisputed that Dwyer never spoke to anyone at Goldman Sachs and Goldman Sachs never supervised his work. (Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶

---

[4] The Court therefore analyzes plaintiff's section 200 and common-law negligence claims simultaneously and its holding with respect to the section 200 claims applies with equal force to the common-law claims. *See Pollack v. Safeway Steel Prods.*, 457 F. Supp. 2d 444, 453 n.5 (S.D.N.Y. 2006).

5; OH&M's 56.1 ¶ 5.) Because plaintiff neither contests these assertions, nor makes any argument whatsoever related to Goldman Sachs' alleged negligence, the Court dismisses plaintiff's Labor Law § 200 and common-law negligence claims against Goldman Sachs.

The remaining issue is whether Structure Tone was negligent. The undisputed facts show that Structure Tone did not have control over the manner in which Dwyer performed his work. Indeed, OH&M—not Structure Tone—directed, controlled, and supervised Dwyer's work and Dwyer did not receive instructions from anyone other than his two direct supervisors at OH&M. (Defs.' 56.1 ¶¶ 4-5; Pl.'s 56.1 ¶¶ 4-5; OH&M's 56.1 ¶¶ 4-5.) Structure Tone's coordination of the work of various subcontractors and its enforcement of safety standards is insufficient to establish the control necessary to impose liability. *See Geonie*, 50 A.D.3d at 445; *Biance v. Columbia Wash. Ventures, LLC*, 12 A.D.3d 926, 927 (3d Dep't 2004). Structure Tone thus cannot be held liable based on the manner in which the work was performed.

As noted, Dwyer also asserts that his injury occurred as a result of a dangerous workplace condition of which defendants had actual or constructive notice. This assertion is without merit. There is no evidence whatsoever that Structure Tone had actual notice of the removed floor tile that Dwyer slipped on or of the unmarked and unguarded opening into which he fell. Nor is there evidence that Structure Tone was aware that workers were placing floor tiles on the ground in areas where others might slip on them, or that floor openings were being left unguarded or without orange cones around them. To the contrary, Ben Mullen, the Structure Tone superintendent for the floor on which Dwyer was working when the accident occurred, instructed all trades to place orange safety cones near any floor openings. (Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11; OH&M's 56.1 ¶ 11.) If additional cones were needed, Mullen would halt the work and direct the workers to get more cones before continuing. (Pl.'s 56.1 ¶

11

21; Def.'s Reply 56.1 ¶ 21; Dep. of Ben Mullen dated Feb. 16, 2010 at 176:25-177:9, Ex. H to Decl. of Scott H. Stopnik dated Feb. 25, 2011.)

Finally, Dwyer maintains that Structure Tone had actual or constructive notice that permitting various subcontractors to work simultaneously and in such close proximity to one another created a dangerous work site. Dwyer may not rely on mere speculation, but "instead must offer some hard evidence" in support of his factual assertions. *D'Amico*, 132 F.3d at 149. He has not done so. Simply put, Dwyer has not shown that having subcontractors work in close quarters is in and of itself a dangerous condition, nor is there evidence that Structure Tone received any complaints that it was unsafe or even difficult for the different trades to work at the same time and on the same floor.

Accordingly, the Court finds that Structure Tone has established that it did not create or have actual or constructive notice of a dangerous condition with respect to (1) loose floor tiles and unmarked floor openings, or (2) different trades working at the same time and in close proximity. Dwyer has failed to raise a triable issue of material fact as to Structure Tone's alleged negligence.

Based on the foregoing, defendants' motion for summary judgment with respect to plaintiff's New York Labor Law § 200 and common-law negligence claims is granted.

### 4.   *Contractual Indemnification from OH&M*

Finally, defendants assert a claim for contractual indemnification from OH&M. "A contract that provides for indemnification will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous." *Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 274 (2007) (internal quotation marks omitted). The Purchase Order between OH&M and Structure Tone, (Ex. K to Stopnik Decl.), contains a relatively clear and unambiguous indemnification provision which states:

> To the fullest extent permitted by law, [OH&M] will indemnify and hold harmless Structure Tone Inc. ("STI") and [Goldman Sachs], their officers, directors, agents, and employees from and against any and all claims, suits, liens, judgments, damages, losses and expenses, including reasonable legal fees and costs, arising in whole or in part and in any manner from the acts, omissions, breach or default of [OH&M], its officers, directors, agents, employees and subcontractors, in connection with the performance of any work by or for [OH&M] pursuant to any Purchase Order and/or related Proceed Order. [OH&M] will defend and bear all costs of defending any actions or proceedings brought against STI and/or [Goldman Sachs], their officers, directors, agents and employees, arising in whole or in part out of any such acts, omission, breach or default.

Under New York law, a party cannot seek indemnification for its own negligence. *See* N.Y. General Obligations Law § 5-322.1. However, New York law does not bar the enforcement of an indemnification provision where, as here, the Court has found that the parties seeking indemnification were not negligent, despite the fact that they might be vicariously liable under Labor Law section 241(6). *See Biance*, 12 A.D.3d at 927; *see also Giangarra v. Pav-Lak Contr., Inc.*, 55 A.D.3d 869, 871 (2d Dep't 2008); *McGuinness v. Hertz Corp.*, 15 A.D.3d 160, 161-62 (1st Dep't 2005).

OH&M does not dispute that it signed a valid Purchase Order containing the indemnification provision or that Dwyer's alleged injuries arose out of OH&M's work for defendants. Rather, OH&M argues that the indemnification provision should not be enforced because OH&M contends that it was not negligent with respect to Dwyer's accident. However, nothing in the indemnification provision suggests that its enforceability depends on whether OH&M was negligent. *See Brown v. Two Exchange Plaza Partners*, 76 N.Y.2d 172, 178 (1990). Because Dwyer's claims are covered by the terms of the indemnification provision and defendants were not negligent as a matter of law, OH&M must defend and indemnify defendants. *See id.*; *De La Rosa v. Philip Morris Mgmt. Corp.*, 303 A.D.2d 190, 193 (1st Dep't 2003).[5]

---

[5] OH&M's assertion that Unity should be required to pay defendants' indemnification and defense costs is irrelevant to this motion. Indeed, Unity is not even a party to this motion.

13

### III.    CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment with respect to (1) plaintiff's New York Labor Law § 240(1) claims, (2) plaintiff's New York Labor Law § 200 and common-law negligence claims, and (3) defendants' contractual indemnification claim against OH&M in the third-party action.   With respect to plaintiff's claims pursuant to New York Labor Law § 241(6), the Court grants the defendants' motion for summary judgment on alleged violations of Industrial Code § 23-1.7(b)(1), (e)(1) and § 23-2.1(a) and (b); and denies the motion as it relates to alleged violations of Industrial Code § 23-1.7(d) and (e)(2).  Plaintiff therefore can proceed on his New York Labor Law section 241(6) claims based on Industrial Code § 23-1.7(d) and (e).

Dated:  New York, New York
        August 17, 2011

Sidney H. Stein, U.S.D.J.

14